and we will next hear argument in the case of the United States v. Jonathan Edward Charles Good morning, and may it please the Court, Gia Kim appearing on behalf of Appellant Jonathan Anderson. I'd like to reserve two minutes of my time for rebuttal. This Court should reverse the District Court's denial of Mr. Anderson's suppression motion because the San Bernardino County Sheriff's deputies did not have the requisite community caretaking purpose to justify the impoundment and therefore the inventory search of Mr. Anderson's truck. This Court's case law makes clear that more than a statutory authorization to tow or to impound is required. The Fourth Amendment demands this community caretaking purpose. And here, whether such a community caretaking purpose existed depends on the District Court's finding at ER 11 that the officers contacted the homeowner and determined that he was not Mr. Anderson's friend prior to conducting the inventory search. A factual finding under this... Counsel, do you think that the officers had to speak to the homeowner to confirm that, to establish a community caretaking purpose? I do in this case where Mr. Anderson asserted that he was asked who does this house belong to and he said, my friend. I think otherwise there would not be... Certainly there are cases this Court has considered regarding parking in one's own driveway. I think the same would be true of parking in a friend's driveway if the homeowner were in fact Mr. Anderson's friend, that it would have to be determined whether the only community that could be served in this instance would be the homeowner's access to the garage and the driveway. What do we do with the fact that on the recording when the defendant starts thinking that a search might happen and he says, can't I get a friend to come and get my car? He doesn't say, can't I get the person in this house to confirm that it's fine. That's true, Your Honor, but I think it doesn't... There was no further inquiry as to that fact one way or the other. I think what the recording also shows is that the deputies had already decided to tow the car, to impound the car. That is at four minutes in this conversation in the recording that we have. It was not conditioned at all or linked at all to the status of the homeowner. It says you don't have... Your license isn't valid. We have to tow and we have to inventory in that sequence. And I think the reason the district court's factual finding is illogical and implausible, which are bases for finding clear error in a factual finding, is because that aspect of the recording. Also, certainly around four minutes and ten seconds of the recording, it certainly sounds like an inventory search is in progress or very imminently about to be in progress. That's at 4.08. Mr. Anderson starts saying, you can't check my truck. Why can you check my truck? And the issue is revived later, 42 seconds later at 4.50 on the recording, where he now is talking in the past tense. I didn't say you can search my vehicle. And he says, I didn't say you could search my vehicle. So there are those two aspects of the recording. That's somewhat ambiguous. So aren't we just bound by the district court's fact finding on that issue? I think the recordings alone may not be enough, but put in combination with two contemporaneous reports prepared by the two deputies there. First, there's the police report at ER 389. And in that report, in a section called narrative, Deputy Peterson, who is the first deputy on the scene, he writes, I informed Anderson because he was driving on an expired driver's license I was going to tow his vehicle. And we hear that on the recording. I retrieved the keys to the vehicle from the grass and began to inventory the vehicle. That is in one sentence. So his testimony was different. So there was an inconsistency. And he also testified, well, we're not told to put things in chronological order. And obviously the district court credited his testimony. I mean, this is what I have trouble with. I mean, the district court credited the testimony, found the officers credible. And we, in order to overturn that, would have to find clear error, as opposed to we would have come out a different way, which is the sort of arguments you seem to be making. I think on this record that it is implausible. It need not be impossible for it to have happened that way. But it is implausible because there's also a fourth account, Deputy Shuler, in the inventory report, which we have argued separately did not produce a complete and significantly compliant inventory. But also in the remarks section of that form at ER 359, Deputy Shuler, the second deputy, gives, again, the same account, the same sequence. He says, you know, he was pulled over, expired CDL, California driver's license. Upon inventory search, firearm located. And then only after that, again, the same sequence, he says, owner of res doesn't know driver. So there are two aspects of the recording. There are two aspects of the report that prepared by the deputies themselves much closer in time. And I think that meets the implausible standard. And even if one sets aside all of those implausibilities, there's the issue of the timing. Even if one accepts, you know, that the search did not occur when Mr. Andrews is saying you can't search, our brief, I think, argued there was at most a minute and 50 seconds. I think the math may have been off and it was actually 2 minutes and 10 seconds. On that point, I know you cite the testimony of Mr. Wallace saying, I spoke to the officer for 3 to 5 minutes, so therefore it couldn't have been done in that time period. But couldn't the district court have perhaps discounted Mr. Wallace's testimony? You know, people are a bad measure of time. I mean, I can't, I mean, Mr. Wallace wasn't an eyewitness. I can't imagine a conversation of this sort lasting 3 to 5 minutes. I mean, I expect an officer to come knocking on the door, say, I'm officer such and such. There's a man named Mr. Anderson who's parked in your driveway. Do you know him? No. Do you want me to take the car out, impound the car? Yes. I mean, I can't imagine it being 3 to 5 minutes. So couldn't district court perhaps make that determination and discount Mr. Wallace's testimony about the timing? I mean, I think it's important to note that the government below did not actually ask the district court to make this finding, that it happened in the sequence that they're now endorsing. They said it didn't matter whether it happened before or after. The district court did not discount expressly Mr. Wallace's testimony. Mr. Wallace was quite certain about the timing. He also thought it was the other deputy who had come to the door. He said he was sure, which would leave even less time for all of this. I think about a minute 45 at most for this to have transpired. However, it was the middle of the night. He was, you know, it's undisputed he was roused from his sleep and that it probably took a minute or two to get to the door in and of itself. And, you know, he again was accurate in the details, even remembered most of the name that he was asked. So I don't see any reason that his disinterested party would be discounted. I think you accurately point out that the district court really didn't tease out or explain any of these potential inconsistencies. So I assume we agree with that. What's the remedy? Should we just reverse? Should we remand for further findings? I mean, I think reversal is justified on this record. However, if this court has some questions as to how this transpired, that the district court said, I don't see anything in this record aside from the testimony that would allow me to conclude in this fashion. And I think that statement was incorrect in that there certainly was countervailing evidence and fairly significant and neutral or prepared by law enforcement evidence to the contrary. And I see that into my rebuttal time. All right. We can save that for rebuttal and we'll hear from the government. Good morning, Your Honors. May it please the court. Byron Tuye on behalf of the United States. The district court here properly denied the defendant's suppression motion. In this case, as the court has already recognized, the deputies lawfully impounded the defendant's truck and in doing so served a community care-taking purpose. The defendant had abandoned his truck in a private driveway where it was blocking access to Mr. Wallace, the homeowner's entrance to the garage. The defendant, very early on in that interaction with Deputy Peterson, admitted that he did not have a valid license. So he couldn't move the truck himself. It was 2 in the morning and there was no other passenger to take the car. And under these circumstances, it wasn't a practical or reasonable alternative to wait or accommodate Mr. Anderson's request to have a friend pick it up. The deputies then conducted an inventory search which complied substantially with San Bernardino County Sheriff's Department policies. Counsel, how is that true? I mean, looking at the case law here, we have said that it doesn't have to be perfect compliance with the policy. It has to be substantial, as you just said. And in the prior fact patterns of the cases, even if the inventory form itself doesn't have a complete list, if the police report has a list and there's a reference to the police report, or if there's an evidence log that has all the information, then we'll say that's substantial compliance. Here, we almost have no list. We have, like, one item on the inventory list and nothing else listed. And there's no other list that we're incorporating from any other place. How is this substantial compliance? That's correct. And I would submit, Your Honor, that under this court's findings in Garay, for example, the absence of an inventory list that itemizes every item of property in a vehicle that is about to be impounded isn't fatal to the search. And here in this case, the record supports Deputy Shuler's testimony, first of all. He stated that he took 10 to 15 minutes to conduct a thorough inventory search of this car. Both the exterior and interior of the car were diagrammed on the CHP 180 form. And they also took pictures of the interior. And at the end of the day, ultimately what is at issue here is whether the Deputy Shuler's failure to list a half-empty bottle of cologne and two pairs of ray-bound sunglasses, which he testified that he did not see during the inventory search, whether that constituted a material deviation from the policy. And I would submit that it doesn't. The CHP 180 form lists the gun and the holster, which the deputies testified was the most significantly valued items that they saw in the car. And also, conveniently, the evidence, right? The only thing they inventoried was evidence. That's correct. Your Honor, the government's position is that the inventory not only included the remarks section that listed the gun and the holster, but also the check boxes in the middle of that form. Those, too, show compliance or an inventory of what was in the car. So if you look at those boxes, they note, for instance, the existence of another radio referring to the speaker that was in the back, the hardware items that were present in the truck itself. So this, too, constitutes an inventory of what was inside there. And the fact that they didn't list the iPhone chargers or other personal items that the deputy testified that he had never listed in inventory form does not constitute a deviation from the policy and should satisfy the inventory search requirement in this case, Your Honor. Well, the deputy's practices are disputed in the record, right? Because he testifies, I don't include some of these things like tools and other stuff, and then there was evidence presented to the district court that, in fact, he does, and he did, in other cases, list exactly those kinds of things. That is correct, and the record here shows that there were a lot of items in the back of the truck and in the front of those trucks, and they were captured in photographs. And both Deputy Peterson and Deputy Shuler said, as a matter of inefficiency, they take pictures sometimes to both inventory the contents as well as to document the evidence to supplement the police report. I don't know what to do with the pictures because the record doesn't establish that the pictures were attached to or otherwise incorporated into the inventory. So what do I do with that in terms of analyzing whether an inventory was completed? I mean, we're on an exception to the warrant requirement for doing an inventory search, and yet we basically have no inventory. I would disagree, Your Honor, respectfully. I believe that the inventory, as captured in the CHP 180 vehicle report, thoroughly documents the contents of the vehicle, the conditions of the vehicle. There is a diagram of the car on that form that Deputy Shuler took the time to mark where existing dents and damages to the bumper and the truck were. So perhaps there are situations, as in this one, where there are simply not many personal items worth listing in inventory, in which case the inventory would look just as it did here, where coincidentally the items of value were the gun and the holster, which had some evidentiary value to the ultimate case. If we disagree with you and conclude that the inventory was not sufficient, does this search fail? I believe that it would under this courseholding doctrine concerning inventory searches, but again, I don't believe that the record supports that this was an insufficient search. You had previously raised the inevitable discovery as another basis, and I don't think that was raised as here. Have you abandoned that as a theory of why the search was valid? To clarify, Your Honor, I don't believe the government relied on the inevitable discovery doctrine below, and we don't do so here on appeal, because the entry into the truck was itself the inventory search. I don't believe that doctrine would apply necessarily. That was referenced by the district court's ruling below. The opposing counsel said that from the point that Mr. Shuler made his last statement, that's heard on the tape, to the point where a dispatch says they got the serial number of the gun from Mr. Peterson is two minutes and ten seconds, and suggests, I think, as a matter of common sense, that that's not enough time for Mr. Shuler to have made contact with Mr. Wallace, to have gotten the information, to have conveyed it to Mr. Peterson for Peterson to do the search and make the phone call. But the government said, no, that is enough time. What's the basis for your saying that that's enough time? I think the record makes clear, and specifically the recording in the two-minute and ten-second time period is consistent with the deputy's testimony. There's nothing about the sequence of events here to suggest that it would take longer than that. So Mr. Wallace's testimony, as Your Honor noted earlier, was that a deputy came to his door and simply asked whether he knew the defendant's name, Jonathan Anderson. That could not reasonably be construed to be a three- to five-minute conversation. Also, Mr. Wallace's testimony, to the extent that it's inconsistent with that timeline, the district court below did not clearly err in discrediting it, because he was faulty in other respects. He only remembered seeing one deputy at his door, when in reality there were two deputies, one in the driveway, one in the door, and because they both came separately in patrol cars, two patrol cars outside. He also misremembered the amount of time that it took between the follow-up interview with a completely different deputy, saying that that was a few weeks later, when in truth it was about four-and-a-half months later. But shouldn't we then at least remand it, at the very least, to the district court? I know your opposing counsel pointed out a lot of potential inconsistencies in the district court at the hearing. It's very cursory, no explanation explaining the inconsistencies, and these people testified at the suppression hearing, and the judge could weigh credibility, et cetera, but we have no basis to really, we're kind of speculating in some way, saying, well, maybe it could have been, but we just don't know. Right, and I see my time is running short, so I'll quickly address this question. No, I don't believe remand is necessary. I believe this court can affirm on any basis that support in the record. And after Magdarella, moreover, to the extent that a specific factual finding was not made, this court can affirm if there is a reasonable view in the record to support it. And as a secondary point to that, I believe the district court Judge Klausner's oral ruling did sufficiently identify that there were discrepancies between the testimony, alluding to this specific topic that we are talking about now with Mr. Wallace's testimony standing in conflict to the recording or deputy's testimony. So I don't think it was ambiguous in that regard. And with that, Your Honors, I see that my time is running, so unless the court has further questions, the government will submit and respectfully request that you affirm the district court's finding below. Thank you. Thank you. And Ms. Kim, I think you have a minute for rebuttal. Thank you, Your Honor. Two quick points. First, as to compliance or substantial compliance or deviation from the inventory protocols at ER 51 and 52, whether under the relevant local policy, there's nothing in there that permits photographs as a substitute inventory. I think what distinguishes this case from Garay, as Judge Forrest noted, is that we actually have, unusually at ER 60, an example of Deputy Shuler's inventory in another case where there was a speaker. There were tools. If he says those objects are captured in the photographs, if he says he didn't see them, I think that goes to the pretextual nature of an inventory search or the sort of slipshod nature of the inventory search. Second, as to the question of remand, I think remand could be appropriate here precisely because the government did not say that this was the relevant factual dispute and that it was irrelevant either way. So defense counsel had no cause to say, for instance, pin down exactly whether Mr. Wallace was speaking to Deputy Peterson, as it seemed to think he was, or Deputy Shuler. There are other items that could have been fleshed out had that factual dispute been presented, fronted in the district court. Thank you. I thank both parties for their arguments. The case of United States v. Anderson is submitted.
judges: IKUTA, LEE, FORREST